Leanard COLEY, Plaintiff—Appellant,

v.

GRANT COUNTY, a political subdivision of the State of Oregon, Grant County Sheriff's Department, and Fred L. Reusser, individually and in his official capacity, Defendants—Appellees.

No. 01–35119.
D.C. No. CV 99–01753–DCA.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 2002.

Decided March 22, 2002.

---

**2.** We reject Clark's remaining contentions as meritless.

Before B. FLETCHER, O'SCANNLAIN, and BERZON, Circuit Judges.

### MEMORANDUM *

Coley, formerly a probationary Correctional Officer in the Grant County Jail, appeals from the district court's grant of the County's[1] motion for summary judgment on his disability discrimination claims. Coley alleges that the County discriminated against him based on his hearing impairment in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, accompanying state law, Or.Rev.Stat. § 659.436, and the Equal Protection Clause of the Fourteenth Amendment. Because the facts are known to the parties, they are not discussed except as necessary.

### I

The parties stipulated for purposes of summary judgment that Coley was both "disabled" as defined by the ADA and otherwise qualified for his position. Therefore, we can assume that Coley established a prima facie case of disability discrimination, and the only question for us is whether the County terminated him because of his disability. *Kennedy v. Applause, Inc.,* 90 F.3d 1477, 1481 (9th Cir. 1996).

Under *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), once Coley establishes a prima facie case of discrimination, the burden shifts to the County to articulate a legitimate, nondiscriminatory reason for taking the adverse employment action. Once met, the burden shifts back to Coley to show that the County's reason is a pretext for discrimination. *Id.* at 254–56, 101 S.Ct. 1089; *see also Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

 The County presented ample evidence that Coley's job performance was inadequate and created a safety risk for

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. This memorandum will use "County" to refer to all defendants.

his co-workers and inmates. Shortly after Coley became a full-time probationary employee, his co-workers began telling the Jail Manager, Sergeant Stephen McGuire, about his poor performance. In particular, they questioned his ability to do the job and stated that he was not catching on. There were negative comments about Coley's friendly relationships with inmates and his inattentiveness to the control board (e.g., he would read magazines, exercise with a barbell, and make personal phone calls). Coley shared his personal pizza with inmates and gave them his magazines with photos of nude women that would not have made it through contraband screening. He was also slow to open doors when at the control board, lacked basic keyboarding skills, and once came to the jail on his day off to get non-prescription drugs from the medical room.

Coley argues that a fact-finder could infer discrimination from the County's failure to warn him about his sub-par job performance and give him a chance to improve. However, over one month before he was terminated, McGuire conducted a job evaluation with Coley and indicated that his work performance was "below average" and needed "immediate improvement." McGuire advised Coley that "recently numerous staff ... have come to [him] concerned about [Coley's] negative attitude and complaining." After his job evaluation, Coley should have been well aware that he needed to improve his performance immediately.

■ Coley next argues that the County's "inconsistent" reasons for terminating him give rise to an inference of discrimination. The County stated that it fired Coley both for his poor performance and for safety reasons. We do not believe these reasons are inconsistent or mutually exclusive; indeed, Coley's *non*-hearing-related inattentiveness at the control board, listed

above, and his friendly inmate relations created safety risks for both his co-workers and the inmates.

Coley notes that some of his co-workers expressed safety-related concerns arising from his hearing impairment, and he argues that the County's reliance on safety reasons as one ground for his termination reflects those disability-related concerns. The record on summary judgment, however, establishes that the County not only based its decision solely on reasons unconnected to Coley's hearing impairment, but also expressly rejected complaints connected to that impairment as irrelevant to the evaluation of Coley's job performance.

■ Finally, Coley argues that the failure to accommodate his disability demonstrates that the County's legitimate, non-discriminatory reasons are a pretext for discrimination. The ADA imposes an affirmative duty on employers to provide "reasonable accommodations to the *known* physical or mental limitations" of their employees. 42 U.S.C. § 12112(b)(5)(A) (emphasis added). Under *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105 (9th Cir.2000) (en banc), *cert. granted in part*, 532 U.S. 970, 121 S.Ct. 1600, 149 L.Ed.2d 467 (2001), the obligation to engage in an "interactive process" to find a reasonable accommodation is "triggered either by a request for accommodation by a disabled employee or by the employer's recognition of the need for such an accommodation." *Id.* at 1112. Here, Coley admits that he never requested an accommodation. In some narrow circumstances, an employer has an obligation to engage in the interactive process without a request from the employee, *id.* at 1112, but here those circumstances were not present. The County did not attribute Coley's poor performance to his hearing impairment, nor did Coley's disability prevent him from requesting an accommodation. For the same reasons, Coley cannot

maintain a separate cause of action for failure to accommodate his disability.

Thus, we hold that Coley failed to show that the County's legitimate, nondiscriminatory reasons for terminating him were a pretext for discrimination.

## II

■ Under Oregon law, it is unlawful to discriminate in employment decisions against an individual with a disability. Or. Rev.Stat. § 659.436. The Oregon statute is to be construed in a manner consistent with provisions of the ADA. Or.Rev.Stat. § 659.449. Because we hold that the County did not discriminate under the ADA, we likewise hold that the County did not violate Oregon anti-discrimination law.

## III

■ Coley also brought a 42 U.S.C. § 1983 action, alleging that his termination violated the Equal Protection Clause. Because individuals with disabilities are not a suspect class of persons, a state action need only be rationally related to a legitimate government purpose to satisfy equal protection scrutiny. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Lee v. City of Los Angeles*, 250 F.3d 668, 686–87 (9th Cir.2001). Here, the County's reasons for terminating Coley were rationally related to the legitimate purpose of keeping the jail safe and operating efficiently.

AFFIRMED.