**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA, ex rel.,
*Plaintiff,*

and

NYOKA LEE, AKA Seal 2; TALALA
MSHUJA, AKA Seal 3,
*Plaintiffs-Appellants,*

v.

CORINTHIAN COLLEGES, AKA Seal
A; ERNST & YOUNG LLP, AKA
Seal B; DAVID MOORE, AKA Seal
C; JACK D. MASSISMINO, AKA Seal
D; PAUL ST. PIERRE, AKA Seal E;
ALICE T. KANE, AKA Seal F;
LINDA A. SKLADANY, AKA Seal G;
HANK ADLER, AKA Seal H; TERRY
O. HARTSHORN, AKA Seal I,
*Defendants-Appellees.*

No. 10-55037

D.C. No.
2:07-cv-01984-
PSG-MAN

OPINION

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Submitted June 8, 2011*
Pasadena, California

Filed August 12, 2011

*The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

10719

Before: Betty B. Fletcher and N. Randy Smith,
Circuit Judges, and Rudi M. Brewster, District Judge.**

Opinion by Judge B. Fletcher

---

**The Honorable Rudi M. Brewster, Senior District Judge for the U.S.
District Court for Southern California, San Diego, sitting by designation.

**COUNSEL**

Scott D. Levy, Law Offices of Scott D. Levy & Associates P.C., Houston, Texas, for the appellants.

Brad D. Brian, Blanca F. Young, Munger Tolles & Olson LLP, Los Angeles, California, for appellee Corinthian Colleges, Inc.

Timothy J. Hatch, James L. Zelenay, Jr., Gibson, Dunn & Crutcher LLP, Los Angeles, California; Bruce M. Cormier, Ernst & Young LLP, Washington, DC, for appellee Ernst & Young LLP.

## OPINION

B. FLETCHER, Circuit Judge:

Nyoka Lee and Talala Mshuja ("Relators"), *qui tam* relators who bring this action on behalf of the United States government, appeal the district court's judgment dismissing, without leave to amend, their original complaint ("Complaint") against Corinthian Colleges, Inc. ("Corinthian"); David Moore, Jack D. Massimino, Paul St. Pierre, Alice T. Kane, Linda A. Skladany, Hank Adler, and Terry O. Hartshorn (collectively "Individual Defendants"); and Ernst & Young LLP ("EY"), under Federal Rule of Civil Procedure 12(b)(6). Relators allege that Corinthian, with the help of EY, falsely certified to the Department of Education ("DOE") its compliance with the Higher Education Act's ("HEA") ban on recruiter-incentive compensation in order to receive federal education funds, thereby violating the False Claims Act ("FCA"). The district court granted Corinthian's and EY's motions to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). The district court concluded that Relators had failed to allege a false statement and scienter, two elements of the FCA, because Corinthian's recruiter Compensation Program as alleged falls within the HEA Safe Harbor Provision promulgated by the DOE. Relators timely appealed. We have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand.

### I.

#### A. General Background

The federal government distributes funds under Title IV of the HEA, 20 U.S.C. § 1094, in order to assist with the costs of secondary education. In order to receive federal funds under the HEA, schools must enter with the DOE into a Program Participation Agreement, in which they agree to abide by a host of statutory, regulatory, and contractual require-

ments. *U.S. ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1168 (9th Cir. 2006) ("*Hendow*"); *see also* 34 C.F.R § 668.14(a) (2010). Among these requirements is a recruiter-incentive compensation ban, which prohibits institutions from paying recruiters "incentive payments" based on the number of students they enroll. More specifically, this ban prohibits schools from "provid[ing] any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any persons or entities engaged in any student recruiting or admission activities or in making decisions regarding the award of student financial assistance." 20 U.S.C. § 1094(a)(20). "This requirement is meant to curb the risk that recruiters will 'sign up poorly qualified students who will derive little benefit from the subsidy and may be unable or unwilling to repay federally guaranteed loans.' " *Hendow*, 461 F.3d at 1168-69 (citation omitted).

In 2002, the DOE amended its previous regulations and created a "safe harbor" provision interpreting and clarifying this ban on recruiter-incentive compensation. The regulation provides that an educational institution may, without violating the ban on incentive compensation, provide "payment of fixed compensation, such as a fixed annual salary or a fixed hourly wage, as long as that compensation is not adjusted up or down more than twice during any twelve month period, and any adjustment is not based solely on the number of students recruited, admitted, enrolled, or awarded financial aid." 34 C.F.R § 668.14(b)(22)(ii)(A) (2010) ("Safe Harbor Provision"). Both the ban on incentive compensation and the Safe Harbor Provision were in effect when this suit was filed.[1]

---

[1]Since this suit was filed, the DOE has engaged in negotiated rulemaking to reexamine this and other HEA safe harbor provisions. In the final regulations resulting from this process, which took effect in July 2011, the DOE eliminated the Safe Harbor Provision for salary-based compensation. *See* 75 Fed. Reg. 66832 (Oct. 29, 2010). In commenting on the elimination of the Safe Harbor Provision, the DOE notes that "the Department's experience has demonstrated that unscrupulous actors routinely rely upon these

### B. Factual and Procedural Background

Corinthian, a public company headquartered in Orange County, California, operates for-profit vocational schools throughout the United States. The Individual Defendants are members of Corinthian's Board of Directors. EY is the independent auditor of Corinthian. Relators are a former employee of and an independent contractor to Corinthian.

On March 26, 2007, Relators filed under seal a *qui tam* action on behalf of the United States government, 31 U.S.C. § 3729 *et seq.*, against Corinthian, the Individual Defendants, and EY (collectively "Defendants"). *See* 31 U.S.C. § 3730(b)(1). In their Complaint, Relators assert against Defendants four causes of action under the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1), (2), (3), (7) (current version at 31 U.S.C. § 3729(a)(1)(A), (B), (C), (G)). Relators also assert several state law claims. On February 25, 2009, the United States gave notice it would not intervene in the action. As relevant here, the allegations in the Complaint are as follows.

Corinthian receives billions of dollars from the federal government under Title IV of the HEA. Despite the HEA's ban on incentive compensation, Corinthian, "as a matter of corporate practice," "pay[s] recruiters bonuses amounting to 2.5% to 10% of their base pay based on the number of students they recruit." More specifically:

---

safe harbors to circumvent the intent of [the incentive compensation ban] of the HEA." *Id.* at 66872. According to the DOE, "the safe harbors have served to obstruct [the objectives of the incentive compensation ban] and have hampered the Department's ability to efficiently and effectively administer the title IV, HEA programs." *Id.* Thus, going forward, educational institutions must comply with the ban on incentive compensation in order to be eligible for federal grant money, but will no longer be able to rely on the Safe Harbor Provision to shield compensation programs based directly or indirectly upon recruitment numbers.

> As a matter of corporate practice since at least July 2005, recruiters have been required to meet a certain enrollment quota, depending on their salary grade and title. Those recruiters that exceed their quotas receive raises of 2.5% to 10% of their base salary, every six months, depending on the number of new recruits they sign up. The bonus criteria are set forth in a matrix designed by Corinthian. Employees failing to meet their quotas are disciplined, demoted, or terminated.

The promotion guidelines applicable to Corinthian recruiters are presented in a document entitled Corinthian Admissions Representative Compensation Program ("Compensation Program"), which is attached to the Complaint as Exhibit A. Defendants do not contest the authenticity of this document. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

According to the Complaint, Corinthian and the Individual Defendants are liable to the United States under the FCA because of their "use of false statements to obtain HEA, Title IV loan funds. Specifically, in requesting and receiving approximately one-half-billion dollars annually, [Corinthian and the Individual Defendants] falsely represented that Corinthian complied with HEA's prohibitions against using incentive payments for recruiters, which is a core prerequisite to receive any HEA Title IV funds."

The Complaint also alleges that EY "falsely certified that Corinthian was in compliance with recruiter compensation prohibitions." EY allegedly "rubber stamped the information provided to it by Corinthian" and "issued its compliance audits and financial statement audit opinions knowing them to be false and/or in reckless disregard of the truth or falsity of the information provided to the United States." EY thereby "fraudulently caused the United States to pay Title IV, HEA

Program funds to Corinthian by such false and fraudulent compliance audit and financial statement audit opinions."

In essence, then, Relators allege that Corinthian and the Individual Defendants violated the HEA by firing admissions representatives who failed to enroll a minimum number of students, and by compensating admissions representatives based on the number of students they enrolled. Relators additionally allege that Defendants certified to the DOE Corinthian's compliance with the HEA ban on incentive compensation in order to collect federal funds for which they were ineligible, in violation of 31 U.S.C. § 3729(a)(1), (2), (3), and (7) (current version at 31 U.S.C. § 3729(a)(1)(A), (B), (C), (G)).

On August 3, 2009, Corinthian and the Individual Defendants moved to dismiss Relators' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(b)(1), and 9(b). On the same day, EY filed a separate motion to dismiss under the same provisions. The district court granted both motions, concluding that Relators failed under Rule 12(b)(6) to state an FCA claim. The district court held that the Complaint failed to allege that Corinthian's Compensation Program violated the HEA, that is, that Corinthian made any false statement to the United States government in certifying their compliance with that statute. The district court reasoned that the challenged recruiter Compensation Program falls within the DOE Safe Harbor Provision because, under its guidelines, increases in recruiter salaries are not awarded "solely" on the basis of the number of new enrollees that the recruiter achieved. The court also reasoned that, because Corinthian reasonably relied upon the Safe Harbor Provision, it could not have acted with scienter as required by the FCA. Because the district court held the FCA claims against the Individual Defendants and EY were "contingent upon Corinthian Collages' liability," it also dismissed with prejudice the claims against these parties. Finally, the district court dismissed the state law claims on the ground that Relators lacked standing to assert them.

Relators appealed. In this appeal, they ask us to review the district court's conclusion that the allegations in the Complaint do not state a claim under the FCA, and the court's decision to dismiss the Complaint with prejudice. They do not challenge the dismissal of the state law claims.

## II.

"The focus of any rule 12(b)(6) dismissal — both in the trial court and on appeal — is the complaint." *Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). "We review dismissals under Rule 12(b)(6) *de novo*, accepting as true all well-pleaded allegations of fact in the complaint and construing them in the light most favorable to the [Relators]." *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001).

Under the pleading requirements of Federal Rule of Civil Procedure 8, we must determine whether the Complaint contains "sufficient factual matter" that, taken as true, "state a claim for relief is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal citation and quotation marks omitted). Pursuant to this analysis, only pleaded facts, as opposed to legal conclusions, are entitled to assumption of the truth. *Id.* at 1949-50. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. If the Complaint does contain such supporting factual allegations, we assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Furthermore, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or

mistake." Fed. R. Civ. P. 9(b). Because they involve allegations of fraud, *qui tam* actions under the FCA must meet not only the requirement of Rule 8, but also the particularity requirements of Rule 9. *See Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). Notably, Rule 9(b) requires only that the *circumstances of fraud* be stated with particularity; other facts may be plead generally, or in accordance with Rule 8. *See Iqbal*, 129 S. Ct. at 1954; *Meijer, Inc. v. Ferring B.V. (In re DDAVP Direct Purchaser Antitrust Litig.)*, 585 F.3d 677, 695 (2d Cir. 2009), *cert. denied*, 130 S. Ct. 3505 (2010).

We can affirm a 12(b)(6) dismissal "on any ground supported by the record, even if the district court did not rely on the ground." *Livid Holdings, Ltd. v. Salmon Smith Barney, Inc.*, 416 F.3d 940, 950 (9th Cir. 2005).

## III.

**[1]** We first consider whether the facts presented in the Complaint allege an FCA violation by Corinthian. The FCA makes liable anyone who "knowingly makes, uses, or causes to be made or used, a false record or statement" that is material to a "false claim for payment or approval" by the United States government. 31 U.S.C. § 3729(a)(1). A claim under the FCA can be based on the allegation that a party has falsely certified compliance with a statute or regulation as a condition to government payment. *See Hendow*, 461 F.3d at 1171. The essential elements of an FCA claim are (1) a false statement or fraudulent course of conduct, (2) made with requisite scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due. *Id*. at 1174.

### A.  A False Statement

Defendants argue that the Complaint does not allege that Corinthian made a false statement under the FCA, because, as a matter of law, the alleged Compensation Program falls

within the DOE Safe Harbor Provision and therefore does not violate the HEA.

As stated above, Relators allege that Corinthian falsely certified compliance with the HEA's prohibition against paying "any commission, bonus, or other incentive payment based directly or indirectly on success in securing enrollment or financial aid to any persons or entities engaged in student recruiting or admissions activities . . . ." The Complaint contains two factual allegations to support the purported violation of the HEA. First, the Complaint states that, "as a matter of corporate practice," Corinthian recruiters receive a 2.5% to 10% salary increase every six months for exceeding certain enrollment quotas.[2] It also states that employees who fail to meet their enrollment quotas are "disciplined, demoted, or terminated." We consider these allegations in reverse order.

### 1.  *Termination based on recruitment numbers*

[2] Relators allege that employees were "disciplined, demoted, or terminated" on the basis of their recruitment numbers. This does not state a violation of the incentive compensation ban. Even as broadly construed, the HEA does not prohibit *any and all* employment-related decisions on the basis of recruitment numbers; it prohibits only a particular type of incentive compensation. Thus, adverse employment actions, including termination, on the basis of recruitment numbers remain permissible under the statute's terms. *See U.S. ex rel. Bott v. Silicon Valley Colleges*, 262 F. App'x 810, 812 (9th Cir. 2008) (holding that "[t]he decision to fire an employee is not covered by the Act because termination is not a prohibited 'commission, bonus, or other incentive payment.' " (citing 20 U.S.C. § 1094(a)(20))).[3] The Complaint's

---

[2]Although, elsewhere in the Complaint, Relators refer to these salary increases as "bonuses," it is clear from the Compensation Program attached to the Complaint that the challenged compensation is in the form of promotion salary increases rather than one-time bonuses.

[3]We recognize that *U.S. ex rel. Bott v. Silicon Valley Colleges*, 262 F. App'x 810 (9th Cir. 2008), an unpublished disposition, does not serve as

allegation that Corinthian imposes adverse employment consequences on the basis of recruitment quotas does not, therefore, state a violation of the HEA incentive compensation ban, and also does not support the claim that a false statement was made.

### 2. *Compensation based on recruitment numbers*

**[3]** To support an FCA false statement, the Complaint also alleges that Corinthian awards salary increases on the basis of recruitment numbers, in violation of HEA's incentive compensation ban. Defendants argue that Corinthian's recruiter compensation policy, as alleged, falls within the DOE Safe Harbor Provision and does not as a matter of law violate the HEA. As discussed above, the Safe Harbor Provision allows institutions to pay semi-annual salary increases to recruiters only if "any adjustment is not based *solely* on the number of students recruited, admitted, enrolled, or awarded financial aid." 34 C.F.R § 668.14(b)(22)(ii)(A) (emphasis added).

**[4]** The Complaint does not expressly use the word "solely" in alleging that Corinthian awards promotion salary increases on the basis of recruitment numbers. Nonetheless, it does allege that the increases in salary are "based on" and "depend on" the number of students that the recruiter "signs up." It then refers to the Corinthian Compensation Program, which is attached to the Complaint as Exhibit A.[4] The Program can be summarized as follows:

    1.  Only those employees with a rating of at least "Good" are eligible for promotions.

---

binding precedent. Nonetheless, because we find no precedential decisions so closely on point, we refer to *Bott* as persuasive authority where relevant.

[4]A district court may consider documents referenced by the Complaint without converting a 12(b)(6) motion to one for summary judgment. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

2.  Assuming that an employee is eligible for a promotion, the salary increase for which the employee is eligible is determined by the greater of (1) the minimum of the salary range for the position to which they are being promoted ("category 1"); and (2) a percentage salary increase related to how successful that recruiter has been in the previous six-month period ("category 2").

3.  The category 2 increase that corresponds to a particular employee is determined by the number of "net starts" achieved in that six-month period, combined with his overall performance rating ("Good" or "Excellent") for that period.

At first glance, then, it appears that Corinthian's promotion and salary increase system does not rely "solely" on recruitment numbers, but also takes into account whether the employee receives an overall performance rating of "Good" or "Excellent." On this basis, Corinthian argues that its method of awarding salary increases does not violate the HEA.

**[5]** The mere inclusion of this performance rating in Corinthian's Compensation Program, however, does not allow us to conclusively determine whether its method of awarding salary increases falls within the Safe Harbor Provision. At this stage, we have no information as to the basis on which a "Good" versus "Excellent" performance rating is assigned to a Corinthian recruiter. Without an understanding what an employee must do to achieve a rating of "Good," we cannot determine whether the rating is based upon substantive requirements that are separate and distinct from recruitment numbers.[5] If, for

---

[5]Notably, Defendants offer no information as to the method by which the "Good" versus "Excellent" performance review ratings are determined.

example, recruiter performance ratings are awarded on the basis of the number of students that a recruiter enrolls, then this rating system would not in fact provide an *additional* basis on which compensation decisions are made. Under such a system, Corinthian would, in essence, make adjustments to recruiter salaries based "solely" on the number of students enrolled by that recruiter. Interpreting the Safe Harbor Provision so that it covers such a system would directly undermine the HEA express prohibition on "incentive payment based directly or indirectly on success in securing enrollments," *see* 20 U.S.C. § 1094(a)(20).

Moreover, "[w]hen construing a statute or regulation, we look to the whole law, and to its object and policy, not simply to a single sentence or member of a sentence." *Owner-Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co., Inc.*, 632 F.3d 1111, 1115 (9th Cir. 2011) (internal quotation marks and citation omitted). "The plain language of a regulation . . . will not control if clearly expressed administrative intent is to the contrary or if such plain meaning would lead to absurd results." *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1085 (9th Cir. 2007) (internal quotation marks and citation omitted). If the performance rating of at least "Good" requires an employee merely to fulfill basic performance requirements that are expected of any employee (such as showing up on time), then construing the Safe Harbor Provision so that these ratings serve as an independent basis for compensation increases would lead to an "absurd result." Under such a system, educational institutions could entirely circumvent the HEA incentive compensation ban by simply formalizing, through a performance rating system, the basic requirements expected of *any* employee, that is, the requirements of employment itself.[6] Allowing the Safe Harbor Provi-

---

[6]If, by contrast, the "Good" or "Excellent" ratings are driven by concrete, merit-based metrics such as those in *United States ex. rel. Pilecki-Simko v. The Chubb Institute, et al.*, No. 06-3562, 2010 WL 1994794 (D.N.J. May 17, 2010) (holding that a point-based compensation policy that awarded cumulative points for not only enrollment starts, but also student retention, success at recruiting activities, records-keeping, and professionalism, fell within the DOE Safe Harbor Provision), then the compensation program could fall within the Safe Harbor Provision.

sion to shield such a program from HEA's recruiter compensation requirements would render meaningless the "purpose or objective" of the statute. *Owner-Operator Indep. Drivers Ass'n*, 632 F.3d at 1115.

**[6]** Relators do not allege any facts regarding the meaning or basis of the "Good" versus "Excellent" performance ratings included in the Compensation Program attached to the Complaint. As a result, while it is certainly *possible* that Corinthian's Compensation Program falls outside the Safe Harbor Provision (thereby rendering false Corinthian's certification of HEA compliance), the Complaint falls short of stating a *plausible* claim for relief. This deficiency, however, can readily be cured, and Relators are therefore entitled to amend.

### 3. *Leave to Amend*

Although Relators did not seek leave to amend before the district court, the court expressly contemplated whether amendment was appropriate. Because the court concluded that the Compensation Program falls within the Safe Harbor Provision as a matter of law, it held that leave to amend was unwarranted.

Because the issue was expressly addressed and decided by the district court, raised on appeal, and fully briefed by both parties, it is subject to review by this court. *See Kimes v. Stone*, 84 F.3d 1121, 1126 (9th Cir. 1996) (noting that a court of appeals may consider an issue raised for the first time on appeal where it presents a purely legal question and consideration of the issue will not prejudice the opposing party); *see also Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 701 (9th Cir. 1990).

The trial court's denial of leave to amend a complaint is reviewed for an abuse of discretion. *See Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). "When reviewing a district court's decision for abuse of discretion, '[w]e first look

to whether the trial court identified and applied the correct legal rule to the relief requested. Second, we look to whether the trial court's resolution of the motion resulted from a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record.' " *City of Los Angeles v. San Pedro Boat Works*, 635 F.3d 440, 454 (9th Cir. 2011) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc)).

**[7]** "The standard for granting leave to amend is generous." *Balistreri*, 901 F.2d at 701. The court considers five factors in assessing the propriety of leave to amend — bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. *Johnson*, 356 F.3d at 1077. Here, there is no evidence of delay, prejudice, bad faith, or previous amendments. Therefore, leave to amend turns on whether amendment would be futile.

**[8]** Under futility analysis, "[d]ismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." *Krainski v. Nevada ex rel. Bd. of Regents of NV. System of Higher Educ.*, 616 F.3d 963, 972 (9th Cir. 2010) (internal citation and quotation marks omitted); *see also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (noting that a court should permit amendment "unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks and citation omitted)); *Balistreri*, 901 F.2d at 701 (noting that leave to amend should be granted when a court can "conceive of facts" that would render the plaintiff's claim viable). Leave to amend is warranted if the deficiencies can be cured with additional allegations that are "consistent with the challenged pleading" and that do not contradict the allegations in the original complaint. *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990).

Here, we can conceive of additional facts that could, if formally alleged, support the claim that Corinthian made false

statements to the DOE. As previously discussed, Relators could allege that the Corinthian employee performance rating system is merely a proxy for employee recruitment numbers, or that the system is based merely on those basic requirements that any employee would be required to meet.

In addition, Relators repeatedly insist in their briefs that, in practice, Corinthian recruiters were expected to meet enroll-ment quotas and understood that this was *the* basis on which they would receive promotional salary increases. Relators could additionally or alternatively allege that, despite the Compensation Program's purported or documented reliance on something other than recruitment numbers, these salary increases are *in practice* determined on the sole basis of recruitment numbers. It is Corinthian's implementation of its policy, rather than the written policy itself, that bears scrutiny under the HEA, and such allegations would require additional discovery.[7]

[9] Thus, to the extent that the Complaint insufficiently alleges a false statement, Relators could provide additional allegations that would render plausible their claims against Corinthian. Although the district court correctly identified the permissive standard for granting leave to amend, it dismissed with prejudice the Complaint without considering whether additional facts could cure any deficiencies. We conclude that the court abused its discretion and that amendment of the Complaint should have been permitted.

---

[7]Corinthian argues that Relators cannot so amend their Complaint with-out contradicting their current allegations, because they are bound by the admission that "corporate practice" is reflected in the attached Compensa-tion Program. This argument misreads the Complaint. The Complaint alleges that Corinthian, as a matter of "corporate practice," increased recruiter salaries on the basis of recruitment numbers. It then separately points out that the written Compensation Program is attached as Exhibit A. The Complaint never states that corporate practice is entirely consistent with the attached Compensation Program. Thus, the additional allegations would in no way contradict those already in the Complaint.

### B. Scienter

Defendants alternatively argue that, even if Relators did or could allege a false statement, Corinthian's reliance on the Safe Harbor Provision negates scienter, another element of the FCA. The district court agreed.[8]

[10] Under Rule 9(b), "circumstances constituting fraud or mistake" must be stated with particularity, but "malice, intent, knowledge, and other conditions of a persons mind," including scienter, can be alleged generally. *See* Fed. R. Civ. P. 9(b); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2001). Under the False Claim Act's scienter requirement, "innocent mistakes, mere negligent misrepresentations and differences in interpretations" will not suffice to create liability. *Hendow*, 461 F.3d at 1174 (internal citations, quotation marks, and alterations omitted). Instead, Relators must allege that Corinthian knew that its statements were false, or that it was deliberately indifferent to or acted with reckless disregard of the truth of the statements. *U.S. ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1074 (9th Cir. 1998) ("Absent evidence that the defendants knew that the . . . Guidelines on which they relied did not apply, or that the defendants were deliberately indifferent to or recklessly disregardful of the alleged inapplicability of those provisions, no False Claims Act liability can be found.").

---

[8]In adopting this reasoning, the district court cited *Bott*, 262 F. App'x at 812, for the proposition that "[i]f defendants complied with a facially valid regulation, relators cannot show the required scienter under the False Claims Act for actions after the safe harbor regulation was promulgated." Thus, the district court apparently assumed that, regardless of whether Corinthian made a false statement, it *believed* that its compensation program fell within Safe Harbor Provision when certifying compliance with the HEA. If this assumption of fact is true, Corinthian's reliance on the Safe Harbor Provision could indeed negate the allegation that it acted with fraudulent intent. It is unclear, however, on what basis the court assumed this fact, since its inquiry is limited to the allegations in the Complaint.

In order for Relators to sufficiently plead that Corinthian acted with fraudulent intent, therefore, they must allege that (1) Corinthian knew, or acted with reckless disregard of the fact, that its Compensation Program did not fall within the DOE Safe Harbor Provision when it certified to the United States government that it was compliant with the HEA; or, alternatively, (2) even if it believed that its written Compensation Program fell under the Safe Harbor Provision, it knew or acted with reckless disregard of the fact that, in reality, recruiter compensation decisions were made solely on the basis of recruitment numbers.

[11] In the operative Complaint, Relators allege that Corinthian requested federal grant money from the DOE although it "knew it was not eligible to receive such funds based on its recruiting compensation practices, including awarding bonuses based on the number of students a recruiter signs up." Relators also allege, in reciting the FCA counts raised in the Complaint, that Defendants acted "knowingly" or "in deliberate ignorance or reckless disregard." The Complaint, therefore, does allege that Corinthian acted with scienter. It does not, however, clearly allege sufficient facts to support an inference or render plausible that Corinthian acted while knowing that its Compensation Program fell outside of the Safe Harbor Provision on which it was entitled to rely.[9] *See U.S. ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 464 (9th Cir. 1999) (holding that "a [government] contractor relying on a good faith interpretation of a regulation is not subject to [FCA] liability . . . because the good faith nature of his or her action forecloses the possibility that the scienter requirement is met.").

---

[9]Relators argue that the Safe Harbor Provision is invalid because it was promulgated outside of the 360-day time period permitted by the HEA. This argument has no merit, because the Safe Harbor Provision was promulgated as an amendment to the original DOE regulations interpreting the HEA. *See* 67 Fed. Reg. 51735 (proposed Aug. 8, 2002). The original regulations were enacted within the permissible 360-day time frame. *See* 59 Fed. Reg. 22348 (proposed Apr. 29, 1994).

**[12]** Nonetheless, these relatively minor deficiencies can be cured through amendment. Relators repeatedly argue that Corinthian certified compliance with the HEA while knowing that it was in fact compensating recruiters based solely on their recruitment numbers. Realtors further describe how the federal government dispenses HEA funds to educational institutions in accordance with the number of students they enroll and the degree to which Corinthian depends on such funding. These facts, if formally alleged, would certainly support an inference that Corinthian acted with fraudulent intent and did not, in good faith, rely upon the Safe Harbor Provision.

**[13]** Under the liberal standards for amending complaints, Relators should be permitted to plead additional facts that could cure the Complaint's deficiencies as to the allegations that Corinthian made a false statement and acted with the requisite scienter.

## IV.

We now consider whether the Complaint sufficiently alleges a claim against EY and the Individual Defendants.

### A.   Individual Defendants

**[14]** The Complaint's allegations as to the Individual Defendants do not currently meet the heightened pleading requirements of Rule 9. "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (internal citations, quotations marks, and alterations omitted). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum identify the role of each defendant in the alleged fraudulent scheme." *Id*. (internal citations, quotation marks, and alterations omitted).

**[15]** The Complaint fails to set forth each individual's alleged participation in the fraudulent scheme. The Complaint asserts generally that "Corinthian and its co-defendants are liable to the United States under the FCA because of the company's use of false statements to obtain HEA, Title IV loan funds." The only supporting factual allegation involving the Individual Defendants is that they "monitored and approved of the illegal recruiter compensation practices as a means to obtain targeted enrollment levels for the respective Corinthian campuses." The Complaint provides no additional detail as to the nature of the Individual Defendants' involvement in the fraudulent acts, but simply attributes wholesale all of the allegations against Corinthian to the Individual Defendants. Rule 9(b) undoubtedly requires more.

Furthermore, the Complaint fails to allege that the Individual Defendants had any role in making a false statement to the United States government. While it does assert that the individuals monitored Corinthian's recruiter compensation practices, it does not allege that the Individual Defendants participated in certifying HEA compliance to the DOE for the purpose of receiving federal funds.

**[16]** Nonetheless, because Relators could amend their Complaint to sufficiently state an FCA claim against Corinthian, we cannot conclude that amendment as to the Individual Defendants would be entirely futile. Additional facts could render plausible an inference that one or more of Corinthian's Board of Directors oversaw or actively participated in the alleged fraudulent scheme, including making false statements to the United States government. Relators should have at least one opportunity to add any such facts to the Complaint. As with Corinthian, the district court dismissed the Individual Defendants because of the Complaint's purported failure to state a false claim, but it failed to consider whether additional facts could cure any deficiencies. Amendment should have been permitted.

## B. Ernst & Young LLP

We now consider the Complaint's allegations as to EY. Relators allege that EY submitted "false statements" regarding Corinthian's compliance with the HEA via two types of reports — compliance reports ("HEA Compliance Reports" or "Compliance Reports") and financial statement audit reports ("Financial Statement Reports").

### 1. *Judicial notice*

EY first argues that dismissal is warranted because it did not, as a matter of fact, perform the Compliance Reports certifying Corinthian's compliance with HEA. It asks us to take judicial notice of this fact based on a letter, sent to the Board of Directors of Corinthian from Weworski & Associates, expressing the opinion that Corinthian had complied in all material respects with the HEA for the fiscal year ending June 30, 2008. EY further asks the Court to take judicial notice of the fact that the Financial Statement Reports referenced in the Complaint do not state any opinion or give any indication as to Corinthian's compliance with the HEA.

As a general rule, we "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee*, 250 F.3d at 688 (internal citation and quotation marks omitted). We may, however, consider materials that are submitted with and attached to the Complaint. *Id*. We may also consider unattached evidence on which the complaint "necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Lee*, 250 F.3d at 688.

Pursuant to Federal Rule of Evidence 201, we may also take judicial notice of "matters of public record," *Lee*, 250 F.3d at 689, but not of facts that may be "subject to reason-

able dispute." *Id.* at 689. More specifically, we may not, on the basis of evidence outside of the Complaint, take judicial notice of facts favorable to Defendants that could reasonably be disputed. *See id.* at 689-90.

Here, we can consider the *existence of* the reports identified by EY, since the Complaint expressly refers to and "necessarily relies on" them. Nonetheless, we may not, on the basis of these reports, draw inferences or take notice of facts that might reasonably be disputed. Whether EY is ultimately responsible for certifying Corinthian's compliance with HEA, and whether the Financial Reports they submitted failed accurately to reflect Corinthian's HEA-related liabilities, are open questions requiring further factual development. At the very least, they are certainly subject to "reasonable dispute." Therefore, while EY's factual assertions with respect to the reports cited in Relators' Complaint may ultimately prove true, we will not decide these disputed factual matters at this stage. Instead, we focus only on the sufficiency of Relators' allegations.

### 2. *Sufficiency of the Allegations*

In the Complaint, Relators allege that EY "falsely certified that Corinthian was in compliance with the recruiter compensation prohibitions" and "failed to perform the legally required evaluation to determine if Corinthian's recruiter compensation practices were legal." The Complaint further states that EY "issued its compliance audits and financial statement audit opinions knowing them to be false and/or in reckless disregard of the truth or falsity of the information provided to the United States." It then provides details as to the particular information that EY omitted from its financial reports. Finally, the Complaint alleges that EY "fraudulently caused the United States to pay Title IV, HEA Program funds to Corinthian by such false and fraudulent compliance audit and financial statement audit options."

**[17]** Assuming that the Complaint is amended to sufficiently allege that a false statement was made to the United States government, we conclude that Relators have met their burden under Rule 12(b)(6) and Rule 9(b) as to EY. Relators have alleged all four elements of the FCA with respect to the company. Moreover, citing to financial accounting standards, the Complaint provides details as to what practices are being challenged, namely the omission of information related to Corinthian's compliance with the HEA, and what practices should have been used in their place. *See In re Integrated Res. Real Estate Ltd. P'ships Sec. Litig.*, 815 F. Supp. 620, 669 (S.D.N.Y. 1993). The Complaint therefore sets forth EY's alleged fraudulent act in a "particularized manner."

**[18]** The Complaint also sufficiently alleges scienter as to EY. The Complaint expressly states that EY issued reports "knowing them to be false and/or in reckless disregard of the truth or falsity of the information provided to the United States." It additionally alleges that EY had knowledge of the amount of money Corinthian received from HEA funds and the manner in which this money was spent on recruiter compensation. These facts, taken together, support a "plausible" inference that the company acted with fraudulent intent. *Cf. Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007) (noting that, under the heightened scienter requirements of the Private Securities Litigation Reform Act of 1995, court must consider whether all facts, considered collectively, give rise to a strong inference of scienter).

Assuming that they amend their Complaint to sufficiently allege a false statement, we conclude that Relators have sufficiently pled an FCA violation as to EY.

## V.

In accordance with the analysis above, we reverse the district court's 12(b)(6) dismissal as to Corinthian, the Individual

Defendants, and EY, and we remand with instructions to permit leave to amend the Complaint.

**REVERSED AND REMANDED.**