**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| NICHOLAS BROWN, individually and on behalf of all others similarly situated, | No. 24-6678 |
| | D.C. No. 2:23-cv-07851-DMG-RAO |
| *Plaintiff - Appellant*, | |
| v. | |
| THE BRITA PRODUCTS COMPANY, | OPINION |
| *Defendant - Appellee*. | |

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted March 5, 2026
Pasadena, California

Filed April 16, 2026

Before: Kim McLane Wardlaw, Ana de Alba, and Eric C.
Tung, Circuit Judges.

Opinion by Judge Wardlaw

# SUMMARY[*]

## Products Liability / California Law

The panel affirmed the district court's dismissal of a putative class action brought by Nicholas Brown against The Brita Products Company alleging violations of California law in connection with Brita's water filter products labeling.

Brown alleged that, as a result of misrepresentations and omissions, he purchased a Brita filter, but he would not have purchased or paid as much as he did for the filter had he known that it does not reduce to below lab detectable levels various hazardous contaminants.

Omissions may be the basis of claims under California consumer protections laws. An omission is material if a reasonable consumer would attach importance to its existence or nonexistence in determining his choice of action in the transaction at issue.

The panel held that no reasonable consumer would expect Brita's Products to perform as Brown alleged he subjectively expected that they would. A reasonable consumer would not have attached importance to the fact that Brita's Products do not remove or reduce common contaminants to health to below lab detectable limits. Because the complaint failed to meet the reasonable consumer standard, the district court did not err by holding that Brown's material omission claim failed as a matter of law.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the district court properly denied Brown leave to amend his complaint because amendment would be futile.

## COUNSEL

Brent A. Robinson (argued), Bahar Sodaify, Katelyn M. Leeviraphan, Ashley M. Boulton, Ryan Clarkson, Glenn A. Danas, and Alan Gudino, Clarkson Law Firm PC, Malibu, California, for Plaintiff-Appellant.

Jonah M. Knobler (argued), Shelli G. Gimelstein, and Steven A. Zalesin, Patterson Belknap Webb & Tyler LLP, New York, New York; Mark A. Neubauer, Carlton Fields LLP, Los Angeles, California; for Defendant-Appellee.

## OPINION

WARDLAW, Circuit Judge:

Would a reasonable consumer expect a fifteen-dollar water filter to "remove or reduce to below lab detectable limits common contaminants hazardous to health" in tap water, notwithstanding clear disclosures to the contrary? We conclude that reasonable consumers would not have that expectation.

Nicholas Brown brought a putative class action against The Brita Products Company ("Brita") for: (1) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; (2) violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*; (3) violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; (4) Breach of Warranty; and (5) Unjust Enrichment/Restitution.[1] Brita removed the case to federal court on September 20, 2023, and the district court granted Brita's motion to dismiss without leave to amend. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I.   FACTUAL BACKGROUND

Brita manufactures, markets, advertises, and sells water filters and compatible pitchers and dispensers (the "Products"). Its Products appear in stores across the country. Brita offers filters with different capabilities that cater to consumers' various needs and preferences. The Standard

---

[1] The Complaint brings claims on behalf of a nationwide class, as well as a California sub-class. The California law claims are brought on behalf of the sub-class.

Filter, Brita's lowest cost filter, is certified to reduce five contaminants—copper, mercury, cadmium, chlorine, and zinc—to below the levels recommended by the National Sanitation Foundation ("NSF") and United States Environmental Protection Agency ("EPA"). The Elite Filter, a more expensive model, reduces more than a dozen other contaminants to less than or equal to NSF/EPA recommended levels.

Brita's packaging discloses that it "reduces" certain harmful contaminants, consistent with the capability of the filter purchased. For example, the Brita Everyday Water Pitcher, which includes the Standard Filter, represents on the front label that it "Reduces Chlorine (taste & odor), Mercury, Copper and more" and directs consumers to "see back panel for details." The back label states that the "Brita® Water Filtration Pitcher reduces the following harmful contaminants that may be in your tap water," identifying "Copper," "Mercury," "Cadmium," "Chlorine (taste and odor)," and "Zinc (metallic taste)." It further states that "[t]he Brita® Pitcher Filter . . . has been tested and certified by NSF International in all Brita® pitchers and dispensers against NSF/[American National Standards Institute ("ANSI")] Standards 42 and 53 for the reduction of the claims specified on the Performance Data Sheet."

Brita's Products also reference, by a QR code or otherwise, additional sources of information concerning each Product's filtering capabilities known as "Performance Data Sheets." Performance Data Sheets contain more detailed information on exactly which contaminants are filtered by Brita's Products, and to what extent. For

example, the Standard Filter's Performance Data Sheet discloses the following information:

**PERFORMANCE DATA SHEET FOR BRITA® SYSTEM WITH STANDARD FILTER (MODEL #OB03)**

**IMPORTANT NOTICE:** Read this Performance Data Sheet and compare the capabilities of this unit with your actual water treatment needs. It is recommended that, before purchasing a water treatment unit, you have your water supply tested to determine your actual water treatment needs.

| SUBSTANCE | REDUCTION | | | | | | U.S. EPA Level*/ NSF Maximum Permissible Product Water Concentration | Health Canada Guideline | TESTING PARAMETERS | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Influent Challenge Concentration | | Filter Effluent | | Percent Reduction | | | | Alkalinity (ppm CaCO₃) | Temp. (°C) | pH |
| | Actual | NSF Target | Average | Maximum | Average | Minimum | | | | | |
| **NSF/ANSI Standard 53 – Health Effects** | | | | | | | | | | | |
| Copper | 2.9 ppm | 3.0±0.3 ppm | 0.17 ppm | 0.25 ppm | 94% | 91% | 1.3 ppmᵃ | ≤1.0 ppmᵇ | 12 | 21 | 6.5 |
| Copper | 3.0 ppm | 3.0±0.3 ppm | 0.40 ppm | 0.57 ppm | 86% | 80% | 1.3 ppmᵃ | ≤1.0 ppmᵇ | 160 | 18 | 8.5 |
| Mercury | 5.8 ppb | 6±0.6 ppb | 0.2 ppb | 0.2 ppb | 96% | 96% | 2 ppb | 1 ppbᶜ | 7 | 21 | 6.4 |
| Mercury | 5.8 ppb | 6±0.6 ppb | 0.2 ppb | 0.4 ppb | 96% | 93% | 2 ppb | 1 ppbᶜ | 110 | 21 | 8.5 |
| Cadmium | 31 ppb | 30±3 ppb | 2.0 ppb | 3.3 ppb | 93% | 89% | 5 ppb | 5 ppbᶜ | 12 | 21 | 6.5 |
| Cadmium | 29 ppb | 30±3 ppb | 0.9 ppb | 2.4 ppb | 96% | 91% | 5 ppb | 5 ppbᶜ | 120 | 20 | 8.6 |
| **NSF/ANSI Standard 42 – Aesthetic Effects** | | | | | | | | | | | |
| Chlorine | 2.1 ppm | 2±0.2 ppm | 0.08 ppm | 0.16 ppm | 95% | 92% | N.A./50%ᵈ | N.A. | N.A. | 21 | 7.4 |
| Zinc | 9.7 ppm | 10±1 ppm | 3.4 ppm | 4.2 ppm | 64% | 56% | N.A./5 ppm | ≤5.0 ppmᵇ | 36 | 21 | 7.9 |

These systems have been tested according to NSF/ANSI 42 and 53 for reduction of the substances listed. The concentration of each of the indicated substances in water entering the systems was reduced to a concentration less than or equal to the permissible limit for water leaving the systems, as specified in NSF/ANSI 42 and 53.

\* The U.S. EPA Levels are Maximum Contaminant Levels (MCLs) and are the same as the NSF Maximum Permissible Product Water Concentrations listed in NSF/ANSI Standards 42 and 53 unless noted otherwise.

ᵃ U.S. EPA Action Level by treatment technique.      ᵈ NSF minimum percent reduction requirement.
ᵇ Health Canada Aesthetic Objective (AO).              N.A. = Not applicable.
ᶜ Health Canada Maximum Acceptable Concentration (MAC).

Brown purchased the Brita Everyday Water Pitcher with the Standard Filter  for approximately fifteen dollars at a store in Los Angeles in 2022.  Brown alleged that he reviewed the Product's labels and packaging and concluded from various representations that the Product "removes or reduce[s] common contaminants hazardous to health . . . to below lab detectable limits."  Specifically, Brown challenged the following representations on the Product's packaging (collectively the "Challenged Representations"):

- "BRITA    WATER    FILTRATION SYSTEM"

- "Cleaner, Great-Tasting Water"

- "Healthier, Great-Tasting Water"

- "The #1 FILTER"

- "REDUCES Chlorine (taste and odor) and more!"

- "REDUCES Chlorine (taste and odor), Mercury, Copper and more"

- "Reduces 3X Contaminants"

He further alleged that Brita "fails to state, expressly, clearly, and conspicuously on the Products' packaging and labels that the Products will not remove or reduce contaminants hazardous to health . . . to below lab detection limits."

Brown alleged that, as a result of the alleged misrepresentations and omissions, he purchased the filter, but that he would not have purchased or paid as much as he did for the filter had he known that it does not reduce to below lab detectable levels various hazardous contaminants, including arsenic, chromium-6, nitrate and nitrites, perfluorooctanoic acid ("PFOA"), perfluorooctane sulfonate ("PFOS"), radium, total trihalomethanes ("TTHMs"), and uranium, collectively the "Common Hazardous Contaminants." He alleged that "[n]o matter where people reside, or their socioeconomic status and educational background, consumers expect that when they purchase a water filtration device, particularly one with the Challenged Representations at issue here, that it will remove and effectively reduce hazardous contaminants commonly found in drinking water."

## II. PROCEDURAL HISTORY

Brita moved to dismiss Brown's complaint shortly after removing it to federal court. The district court dismissed the complaint in full, without leave to amend. The district court first analyzed Brown's claims of alleged affirmative misrepresentations. Applying the reasonable consumer test, the district court concluded that Brown's misrepresentation allegations were "simply not plausible" because no reasonable consumer would "adopt Brown's interpretation" of Brita's Products' capabilities. The district court also acknowledged that Brita makes its Performance Data Sheets accessible to consumers via a QR code on its Products' labels, and that consumers are able to read the Performance Data Sheets to understand the Products' limitations. The district court next turned to Brown's claims of alleged material omissions. The district court concluded that Brita had not failed to disclose any material fact because "no reasonable consumer would behave differently if he knew that the product did not reduce or remove all common contaminants but only those identified."

The district court then examined Brown's "unlawful" claims under the UCL, CLRA, and FAL, in which Brown alleged that Brita violated the California Health & Safety Code by failing to register with a proper regulatory agency and failing to clearly identify on packaging the contaminants that the Products have been certified to remove or reduce. The district court concluded that Brown lacked standing to bring a UCL, FAL, or CLRA claim based on Brita's admitted failure to register its products because Brown did not purchase any of the unregistered products, and therefore he could not assert these claims on behalf of the class. The district court concluded in the alternative that even if Brown had standing to bring these claims, Brown's claim was

"based on an alleged failure to have a lab certify that Brita's Products 'remove' common hazardous contaminants," and Brita's Products were in fact certified by NSF and ANSI. Having concluded that the underlying statements were not actionable under the UCL, FAL, and CLRA, the district court dismissed Brown's common law claims.

Lastly, the district court denied leave to amend. The district court noted that it had reviewed the Products' labels and relevant contaminant standards, and that amendment would be futile because Brown's claims failed as a matter of law.

Brown filed a timely notice of appeal, limited to two issues. First, Brown argues that the district court erred by dismissing his UCL, FAL, and CLRA claims arising out of Brita's alleged material omissions because the district court did not analyze whether Brita had a duty to disclose information based on: (i) an unreasonable safety hazard, and (ii) a central function defect. Second, Brown argues that the district court erred by dismissing the complaint without leave to amend.

## III. STANDARD OF REVIEW

We review a district court's dismissal of a complaint for failure to state a claim *de novo*. *Loffman v. Cal. Dep't of Educ.*, 119 F.4th 1147, 1158 (9th Cir. 2024). "In assessing whether a plaintiff has stated a claim, we accept as true all well-pleaded factual allegations, and construe all factual inferences in the light most favorable to the plaintiff." *Id.* (quoting *Parents for Privacy v. Barr*, 949 F.3d 1210, 1221 (9th Cir. 2020)). A district court's decision to dismiss a complaint without leave to amend is reviewed for abuse of discretion. *Election Integrity Project Cal., Inc. v. Weber*, 113 F.4th 1072, 1099 (9th Cir. 2024). "A district court does

not abuse its discretion in denying leave to amend where 'any further amendment to the complaint would likely prove futile.'" *Id.* (quoting *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990)).

## IV. DISCUSSION

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The FAL prohibits "untrue or misleading" statements made in business "as part of a plan or scheme with the intent" not to engage in such business "as so advertised." *Id.* § 17500. The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). To state a claim under any of these three consumer protection statutes, the plaintiff must allege sufficient facts to satisfy the "reasonable consumer standard." *Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854, 868 (9th Cir. 2025).

## A. Material Omission

"Omissions may be the basis of claims under California consumer protections laws, but 'to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose.'" *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (quoting *Daughtery v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006) (emphasis removed)).

The parties agree that, absent a contrary misrepresentation, a duty to disclose arises under California

law if either (1) a product contains a defect that poses an unreasonable safety risk; or (2) a product contains a defect that defeats its central function. *See Hodsdon*, 891 F.3d at 861–62, 64. The parties also agree that even if one of those two tests is met, an omission is actionable only if it is material. *See Noohi*, 146 F.4th at 868.

"An omission is material if a reasonable consumer would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question."[2] *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (internal quotation marks and citation omitted). The reasonable consumer standard is not satisfied where plaintiffs allege only "a mere possibility that [the] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (internal quotation marks and citation omitted). "Rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (internal quotation marks and citation

---

[2] Brown relies on *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011), to argue that this standard is distinct from the reasonable consumer standard. We disagree. *Stearns* quoted the standard set forth in *Steroid Hormone Prods. Cases*, 181 Cal. App. 4th 145, 157 (2010), which explained that in a California consumer fraud case, a misrepresentation or omission is material if "a reasonable person would find [the misrepresented or omitted fact] important when determining whether to purchase a product[.]" That test is the reasonable consumer standard. *See Noohi*, 146 F.4th at 868; *see also Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). And, California courts have long applied the reasonable consumer standard to claims arising under the UCL, CLRA, and FAL. *See Consumer Advocs. v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003).

omitted); *see also Moore v. Trader Joe's Co.*, 4 F.4th 874, 881–82 (9th Cir. 2021) (same); *Gerber Prods. Co.*, 552 F.3d at 938 ("Under the reasonable consumer standard, [the plaintiff] must show that members of the public are likely to be deceived." (internal quotation marks and citations omitted)). Even assuming that Brown's allegations meet either the unreasonable safety hazard or central function defect test, he still cannot establish that Brita had a duty to disclose that its Products do not completely remove or reduce to below lab detectable levels all of the Common Hazardous Contaminants. Such a disclosure would not be important to a reasonable consumer in light of Brita's other disclosures on its Products' packaging and the objective unreasonableness of such an expectation.

The district court properly held that no reasonable consumer would expect Brita's Products to perform as Brown alleges he subjectively expected that they would. As a matter of law, no reasonable consumer would expect Brita's low-cost filters to completely remove or reduce to below lab detectable levels *all* contaminants present in tap water, particularly in light of Brita's extensive disclosures to the contrary. Brita discloses that its Products "*reduce*" contaminants from tap water, not that the Products remove contaminants entirely. Brita's Products also specifically disclose the contaminants that are reduced and provide easily accessible information (the Performance Data Sheets) as to the extent to which each specified contaminant is reduced.

For example, the Standard Filter's packaging discloses that it reduces five specified contaminants—copper, mercury, cadmium, chlorine, and zinc—to below the levels recommended by the NSF and EPA. The associated Performance Data Sheet discloses the level to which each of the five contaminants is reduced and informs consumers as

to the testing methodology and standards used to determine those levels. Given all of this readily accessible information, it is difficult to see how a reasonable consumer could conclude, as Brown allegedly did, that Brita's Standard Filter and compatible Everyday Water Pitcher "removes or reduce[s] common contaminants hazardous to health, including the Common Hazardous Contaminants, to below lab detectable limits."

Accordingly, we hold that a reasonable consumer would not have attached importance to the fact that Brita's Products do not "remove or reduce common contaminants hazardous to health, including the Common Hazardous Contaminants, to below lab detectable limits." Indeed, knowledge of the Products' limitations is consistent with the disclosures Brita *did* make. Because a reasonable consumer has been made aware of the Products' limitations, we cannot say that a reasonable consumer would have been misled by Brita's omission of these limitations on its Products' packaging. *Ebner*, 838 F.3d at 965.

Because the complaint fails to meet the reasonable consumer standard, the district court did not err by holding that Brown's material omission claim fails as a matter of law.

## B. Leave to Amend

We review for abuse of discretion the district court's dismissal of Brown's complaint without leave to amend. *Election Integrity Project Cal., Inc.*, 113 F.4th at 1099. We review the futility of an amendment *de novo*. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). "The standard for granting leave to amend is generous." *Id.* (citation omitted). While "we do not lightly affirm a denial of leave to amend," we will do so where the plaintiff "simply

wishes to plead more specifically," and "the claim would certainly be defeated" even with the amendment. *Roth v. Garcia Marquez*, 942 F.2d 617, 629 (9th Cir. 1991).

On appeal, Brown argues that we should allow amendment to: (1) "clarif[y] the issue" of materiality; and (2) "clarify exactly how Brita's position as the manufacturer and marketer of the Products placed it in a position with superior knowledge of the Products' inability to protect consumers from exposure to Common Hazardous Contaminants," including through "allegations regarding Brita's exclusive access to non-public data concerning the efficacy of the Products' filtration abilities." But no amendment could save Brown's complaint from the conclusion that reasonable consumers have not been "misle[d] . . . into believing that the Products remove or reduce to below lab detection limits common contaminants from their drinking water that are hazardous to health, including the Common Hazardous Contaminants." Moreover, even if Brita had access to non-public data which shed further light on its Products' capabilities, that would not change the fact that Brita has never claimed that its Products perform as Brown expected them to. Nor would those additional allegations change our conclusion that no reasonable consumer would expect such performance from Brita's Products. Because Brita's liability under the consumer protection statutes rises and falls with the reasonableness of the alleged expectation, Brown's claims fail as a matter of law. *See Noohi*, 146 F.4th at 868 (to state a claim under the UCL, FAL, or CLRA, the complaint must allege facts sufficient to meet the reasonable consumer standard). The district court did not abuse its discretion by denying leave to amend. *See Roth*, 942 F.2d at 629.

## V.  CONCLUSION

The district court properly granted Brita's motion to dismiss because a reasonable consumer would not expect Brita's Products to perform according to Brown's subjective and unreasonable expectations.  The district court also properly denied Brown leave to amend his complaint because amendment would be futile.

**AFFIRMED.**