**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| BERLAN LYNELL DICEY, | No. 11-16190 |
| Plaintiff - Appellant, | D.C. No. 2:06-cv-00482-KJN |
| v. | |
| S. PICKENS; et al., | MEMORANDUM[*] |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the Eastern District of California
Kendall J. Newman, Magistrate Judge, Presiding

Submitted November 5, 2012[**]
San Francisco, California

Before: FARRIS, NOONAN, and BYBEE, Circuit Judges.

We understand and are sympathetic with one who slips and falls resulting in injury, but to grant the relief sought we must find constitutional violations or errors on the part of the trial court. Here, there are none.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

The rejection of a judicial notice request is not itself error. We must examine the basis for the request. *See Lee v. City of L.A.*, 250 F.3d 668, 689-90 (9th Cir. 2001). Dicey sought to have the documents complained of admitted for the truth of the facts contained therein. Those facts are not the proper subject of judicial notice, and the district court properly denied the request. *Id.*

Dicey alleges that he was irreparably prejudiced by defense counsel's closing argument and that the district court erred in not granting him a new trial. It is not the province of the court on appeal to try to measure the effect of counsel's closing argument. In a proper situation, objection would be made and we would consider the trial court's response to the objection. When no objection is made, as here, our inquiry is limited to a search for plain error, "those errors that reach the pinnacle of fault." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1192-93 (9th Cir. 2002). Even under a de novo review, we find no such error. Isolated comments whose prejudicial effect is debatable, when examined within the totality of the trial, do not result in a miscarriage of justice. *Id.* at 1193-94; *Settlegoode v. Portland Pub. Schs.*, 371 F.3d 503, 518-20 (9th Cir. 2004). The trial court did not plainly err in refusing to grant a new trial. *Hemmings*, 285 F.3d at 1192-93.

Dicey also claims that the failure to procure the testimony of Dr. Cox, due to his inability to pay the witness fees, violated his due process rights and 28 U.S.C. §

2

1915. Whether a court abuses its discretion in failing to waive witness fees under 28 U.S.C. § 1915 in these circumstances is a question this Court has already answered in the negative and cannot revisit here. *Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003) (en banc); *Tedder v. Odel*, 890 F.2d 210, 211-12 (9th Cir. 1989).

While we have previously left open the possibility that a due process claim might be successful where an indigent plaintiff cannot pay the required witness fees, *Hadsell v. Comm'r*, 107 F.3d 750, 753 (9th Cir. 1997), we need not reach this issue here. We refuse to speculate on the possible effect of testimony that was never offered to conclude that the inability to produce said testimony because of witness fees results in a due process violation. The record shows that Dicey has offered nothing but mere allegations to demonstrate the content and necessity of and inability to obtain Dr. Cox's testimony. In the absence of any factual basis to support such claims, it would be imprudent to examine and decide whether the Constitution is violated when witness fees prevent a litigant from offering such testimony.

Although the jury unanimously decided for all defendants on all claims, Dicey argues that the verdict on his retaliation claim against Defendant Harrison was against the weight of the evidence. Dicey failed to raise either a Federal Rule

3

of Civil Procedure 50(a) or 50(b) motion, which was necessary to preserve his ability to appeal based on the weight of the evidence. *Unitherm Food Sys., Inc. v. Swift-Exkrich, Inc.*, 546 U.S. 394, 399-407 (2006); *Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086, 1089 (9th Cir. 2007). But, regardless, we have reviewed the record in consideration of this claim. One who merely recites his arguments without addressing the response to those arguments is asking the court of appeal to retry the issues. Our task is to review the case that was before the trial court. Dicey fails to acknowledge, much less address, why we should discredit the substantial evidence that supports the jury's verdict, and his claim must therefore fail. *Harper v. City of L.A.*, 533 F.3d 1010, 1021 (9th Cir. 2008)

Dicey's final claim is that the district court abused its discretion in requiring him to lay a proper foundation for documents and exhibits that he contends should have been admitted forthwith. There is no basis to reverse the district court's decision as Dicey cannot show that it is more probable than not that the error tainted the verdict. *Id.*

*All pending motions are denied as moot.*

**AFFIRMED**.

4

*Dicey v. Pickens*, No. 11-16190

NOONAN, Circuit Judge, dissenting:

This case was begun by Dicey, a prison inmate, acting pro se. Five days before trial including Thanksgiving, counsel was appointed for him. The case was tried before a magistrate judge. On appeal, the law firm of Orrick, Herrington & Sutcliffe volunteered to act as pro bono counsel and has rendered superior service to its client and the court.

The magistrate judge excluded in its entirety a report by the Inspector General of California on state prisons. Doing so, the magistrate judge misread *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001).

*Lee* stands for the proposition that a court may take judicial notice of the fact that a hearing was held, the fact that a waiver of a right was signed by the plaintiff, and the fact that the waiver was signed under as alias. *Lee* at 690. Applying *Lee*, the court should have permitted the admission of the Inspector General's report establishing that an audit had been made of High Desert

1

Prison, signed by the Inspector General and by the Warden and Health Care Manager of the prison.

Dicey could then have cross-examined the warden on the audit's criticism of High Desert, criticism disputed by the defense. It is true, as the defense might have argued, that the audit had taken place in 2001 and could have been out-of-date by the time of Dicey's falls. But the audit's timeliness was not to be determined by the magistrate judge. In a case where a prisoner was seeking to persuade a jury of mistreatment by his custodians, any confirmation of his claims coming from impartial state officials was precious. Dicey is entitled to a new trial with opportunity to use the audit.